IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

UNITED STATES OF AMERICA,

v.

CRIMINAL ACTION NO.
1:17-CR-314-MHC-LTW

NATHAN REED,

Defendant.

## MAGISTRATE JUDGE'S FINAL REPORT AND RECOMMENDATION AND ORDER CERTIFYING THIS CASE READY FOR TRIAL

This case is before the court on Defendant Nathan Reed's ("Defendant") Motion to Suppress Search (Doc. 16), Motion to Suppress Statement (Doc. 17), and Amended Motion to Suppress Search (Doc. 22). For the reasons that follow, Defendant's Motion to Suppress Search and Amended Motion to Suppress Search should be **DENIED**. (Docs. 16, 22). Defendant's Motion to Suppress Statement has been abandoned and should also be **DENIED**. (Doc. 17). Because there are no more motions or other matters to address for Defendant Reed, the undersigned certifies him ready for trial.

## DEFENDANT'S MOTION TO SUPPRESS STATEMENT

In Defendant's Motion to Suppress Statement (Doc. 17), Defendant seeks to suppress statements he made to federal agents who allegedly continued to interrogate him after he asked several times to end the interrogation. On March 2, 2018, the

Courtroom Deputy for the undersigned emailed Defendant's counsel, Robert Glickman, and copied the Government's counsel, Phyllis Clerk, to ascertain how he would like to handle the pending Motion to Suppress Statement in light of the fact that Mr. Glickman had notified the Court that the Court's suppression hearing, set for February 26, 2018, was no longer needed. Ms. Clerk responded to the Court's email and explained that the Government would not seek admission of the Defendant's statement challenged in the Motion and that Mr. Glickman indicated that he would withdraw the Motion given that the Government would not seek admission of Defendant's statement. Additionally, Defendant never perfected his Motion to Suppress Statement. Thus, it appears to this Court that Defendant's Motion to Suppress Statement has been abandoned. See United States v. Rosso, No. 3:14-CR-00014-TCB, 2015 WL 7115860, at *28 n.26 (N.D. Ga. Nov. 12, 2015); United States v. Cadet, No. 1:11-CR-00522-WBH, 2013 WL 504892, at *9 (N.D. Ga. Jan. 16, 2013), R. & R. adopted, No. 1:11-CR-113-WBH-2, 2013 WL 504815 (N.D. Ga. Feb. 8, 2013) (citing United States v. Chappell, No. 1:10-CR-513-WSD-ECS, 2011 WL 5353016, at *5 (N.D. Ga. M ay 25, 2011) (deeming argument defendant raised in pre-hearing motion, but did not expound upon in post-hearing briefs, to be waived and abandoned); United States v. Sanders, No. 3:15-CR-00010-TCB, 2015 WL 6684746, at *2 (N.D. Ga. Oct. 29, 2015) (concluding that where defendant was granted an extension to perfect motion, but did not do so, motion was deemed abandoned); United States v. Shorr, No. 1:07-CR-182-1-TWT, 2008 WL 655994, at *1 (N.D. Ga. Mar. 10, 2008) (same). Accordingly, Defendant's Motion

2

to Suppress Statement should be **DENIED**.

**DEFENDANT'S MOTIONS TO SUPPRESS SEARCH**

**I.     BACKGROUND**

On September 6, 2017, the Grand Jury charged Defendant with knowingly receiving on his computer at least one visual depiction of a minor engaging in sexually explicit conduct as defined in 18 U.S.C. § 2256(2) in violation of 18 U.S.C. § 2252(a)(2), and (b). Defendant was also charged with knowingly possessing a computer and external hard drive that contained at least one visual depiction of a minor engaging in sexually explicit conduct as defined in 18 U.S.C. § 2256(2) in violation of 18 U.S.C. § 2252(a)(4)(B).

On November 23, 2017, Defendant filed his Motion to Suppress Search. (Doc. 16). Therein, Defendant argued that evidence obtained from computers seized during a search of a bedroom he was renting inside of a townhome should be suppressed. In support, Defendant argues that even though the search warrant law enforcement officers relied upon did not specifically authorize the search of Defendant's bedroom, the officers searched the entire townhome, including his bedroom, for materials believed to be possessed by Kevin Dean, another tenant at the rental house. Within the Motion, Defendant requested an evidentiary hearing to address issues presented by his Motion. On November 27, 2017, the Court scheduled a suppression hearing for January 26, 2018. (Doc. 18). On January 23, 2018, Defendant moved for a continuance of the hearing because one of his witnesses was unable to testify on the scheduled date. (Doc. 20).

AO 72A
(Rev.8/82)

The Court granted Defendant's motion and reset the hearing for February 26, 2018. (Doc. 21).  On February 23, 2018, Defendant filed an Amended Motion to Suppress Search (Doc. 22).  Therein, Defendant again argued that law enforcement wrongfully searched his bedroom apartment since the warrant did not specifically authorize the search of his bedroom.  Defendant also stated that he and the Government had agreed to the following facts: (1) that a search was conducted at 4164 Oakwood Way on June 30, 2016, pursuant to a search warrant and the corresponding affidavit in support of the warrant; (2) that the affidavit mentioned that Mr. Dean had a roommate, but no specifics were included, either as to the roommate's identity or the housing arrangements; (3) during the search of the bedroom Defendant rented (which he leased and paid for separately from Mr. Dean), Defendant's two computers were seized; and (4) Defendant was never Dean's roommate.  (Doc. 22, at 2).  Defendant then advised the Court that he would like to present a briefed argument.  On February 23, 2018, defense counsel also emailed the undersigned's courtroom deputy advising her that he did not need to have the hearing set for the following Monday and that he preferred to move to a briefing schedule.  Based on defense counsel's representations in his email, the Court then set a briefing schedule for the parties to brief the issues.  After requesting a couple of extensions of the deadline for filing a reply brief, Defendant filed his Reply on September 17, 2018.  (Docs. 31, 33).        In addition to the four facts to which the parties have agreed as outlined above, both parties referenced the Affidavit of Special Agent Kevin Orkin of the Federal Bureau of Investigation submitted in support of the

4

application for a warrant.  (Docs. 22-1, 30-1).   In his affidavit, Special Agent Orkin stated that FBI Special Agent Thomas Thompson logged onto a peer to peer file sharing program, which allows computer users to share files over the internet with other users running compatible peer to peer software, in an undercover capacity.  (Orkin Aff. ¶ 4). Special Agent Thompson discovered that username "mitch7177" was connected to the network and that mitch7177 had 653 items available for download.  (Orkin Aff. ¶ 5). After downloading and reviewing thirteen of the files, Special Agent Thompson found that the files contained suspected child pornography.  (Orkin Aff. ¶ 5).  Special Agent Thompson used a software tool to capture the internet protocol ("IP") address being used by mitch7177, and discovered that the IP address from which the files were downloaded belonged to Comcast.  (Orkin Aff. ¶ 7).  After obtaining responses to an administrative subpoena served upon Comcast, Special Agent Thompson learned that the subscriber using the IP address was Kevin Mitchell Dean and that the service address was 1395 Alison Court SW in Atlanta.  Special Agent Thompson referred the matter to the FBI in Atlanta, and Special Agent Orkin began investigating the matter.  (Orkin Aff. ¶¶ 9, 10). When Special Agent Orkin followed up on the address for Mr. Dean, the property manager of Dean's apartment complex advised Orkin that Dean was in the process of being evicted for failure to pay rent and that he had unsuccessfully tried to contact Dean. (Orkin Aff. ¶  10).

Special Agent Orkin recontacted Special Agent Thompson to find out what address mitch7177 was currently using.  (Orkin Aff. ¶ 11).  Special Agent Thompson

subsequently advised Special Agent Orkin that the new IP address now belonged to Charter Communications.   (Orkin Aff. ¶ 11).   On request, Charter subsequently identified the subscriber for the IP address as Ryan Morse who resided on 4164 Oakwood Way in Duluth, Georgia. (Orkin Aff. ¶ 12).

On June 8, 2016, Dean responded to a Craigslist ad placed as part of an FBI undercover operation targeting producers of child pornography.   (Orkin Aff. ¶ 14). Dean provided a Kik Messenger ID of mitch7077 to an undercover agent. (Orkin Aff. ¶ 14).   During Dean's conversations on Kik, Dean allegedly indicated an interest in meeting to have sex with an eleven-year-old boy. (Orkin Aff. ¶ 15). Dean further stated that he lived in the Norcross, Georgia area and that he has a roommate.  (Orkin Aff. ¶ 16).   When law enforcement officers conducted a drive-by surveillance on April 13, 2016, officers observed that a Chevrolet registered to Kevin Dean was in the parked area of 4164 Oakwood Way.  (Orkin Aff. ¶ 17).   Based on these facts, Special Agent Orkin sought authorization to search 4164 Oakwood Way in Duluth for, among other things, computers, computer hardware, computer software, and computer files.  (Orkin Aff., Attachments A, B).  The warrant described 4164 Oakwood Way as being a townhouse style home with a front and rear entry.  (Orkin Aff., Attachment A).

## II.   **LEGAL ANALYSIS**

Defendant argues the search of his bedroom pursuant to a warrant was too broad because the affidavit in support of the warrant shows that the FBI's investigation led the FBI to suspect Kevin Dean and an internet account registered to Ryan Morse, but

6

Case 1:17-cr-00314-MHC-LTW   Document 39   Filed 11/13/18   Page 7 of 15

Defendant's name was not mentioned anywhere within the affidavit. In addition, Defendant contends that while the investigation of Dean led to a residence At 4164 Oakwood Way, the affidavit inaccurately described the residence as a townhouse style home instead of a multiple dwelling. Defendant contends that law enforcement officers, despite entering the property and seeing that the property was a multiple dwelling, continued their search through the entire house, including Defendant's rented bedroom, without a warrant specifically authorizing the search of his bedroom. Defendant also contends that because the townhouse was so different from the particulars of the warrant and affidavit, which make no mention of him or the property being a multi-dwelling unit, the officers should have stopped their search and sought a warrant prior to searching his bedroom residence.

The Government argues in response that the warrant authorized the search of Defendant's bedroom because the warrant explicitly authorized the FBI to search the entire premises, acknowledged that Dean had a roommate, and made no reference to exclude the roommate's bedroom and belongings from the search. The Government also argues that the warrant application was supported by probable cause because the username mitch7177 possessed items available for download that contained suspected child pornography, Dean was identified by Comcast as the user behind mitch7177, and Dean resided at 4164 Oakwood Way. The Government further contends that although the initial investigation revealed that Dean was associated with username mitch177, agents had no way of knowing which computers in the residence contained suspected

7

child pornography without taking all the computers and the computer equipment. Finally, the Government contends that to the extent that there was a problem with the warrant, the agents acted in good faith when they relied upon it.

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend IV. The Fourth Amendment provides that warrants shall issue only "upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." Id. The purpose of the particularity requirement was to prevent general searches. Maryland v. Garrison, 480 U.S. 79, 84 (1987). The scope of a lawful search is defined by the object of the search and the places in which there is probable cause to believe that the object of the search may be found. Garrison, 480 U.S. at 85. "Whether a search conducted pursuant to a warrant is lawful requires consideration of issues: the validity of the warrant itself and the reasonableness with which the officers executed the search." United States v. Schwinn, 376 F. App'x 974, 980 (11th Cir. 2010). Defendant has the burden of proof in challenging the validity and the reasonableness of execution of the search warrant. United States v. Lockett, 533 F. App'x 957, 965 (11th Cir. 2013); United States v. Marx, 635 F.2d 436, 441 (5th Cir. 1981); United States v. Osborne, 630 F.2d 374, 377 (5th Cir. 1980) ("Where a search is conducted under the authority of a warrant, the defendant challenging the search carries the burden of showing the warrant to be invalid.").

**A.    Validity**

8

A warrant may not issue except upon a showing of probable cause. Schwinn, 376 F. App'x at 980. In attempting to ensure that search warrant affidavits comply with the Fourth Amendment's prohibition against unreasonable searches and seizures, the issuing magistrate "is simply to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit . . . , there is a fair probability that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238 (1983); United States v. Miller, 24 F.3d 1357, 1361 (1994). "[P]robable cause deals 'with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.'" Gates, 462 U.S. at 241; Miller, 24 F.3d at 1361. "Courts reviewing the legitimacy of search warrants should not interpret supporting affidavits in a hypertechnical manner; rather, a realistic and commonsense approach should be employed so as to encourage recourse to the warrant process and to promote the high level of deference traditionally given to magistrates in their probable cause determinations." Gates, 462 U.S. at 241; Miller, 24 F.3d at 1361. Probable cause to support a search warrant exists when the totality of the circumstances allow a conclusion that there is a fair probability of finding contraband or evidence at a particular location. United States v. Brundidge, 170 F.3d 1350, 1352 (11th Cir. 1999).

Defendant argues the warrant relied on by the agents to search is room was not supported by probable cause because it authorized a search of the entire townhome, an area broader than appropriate under the circumstances. As noted above, Defendant

9

maintains that the warrant should not have allowed for the search of his bedroom because he was not suspected of criminal activity. Contrary to Defendant's argument, as long as probable cause existed to search the entire area described in the warrant when the warrant issued, the warrant is valid. Schwinn, 376 F. App'x at 980. The validity of the warrant is determined as of the time of its issuance on the basis of the information that the officers disclosed or had a duty to discover and disclose to the issuing magistrate [judge]. Garrison, 480 U.S. at 85; Schwinn, 376 F. App'x at 980. Facts learned during the search do not retroactively make the warrant invalid. Schwinn, 376 F. App'x at 980. The mere fact that a dwelling might be shared by others who are not suspected of criminal activity is not enough to exclude portions of a dwelling from the warrant's scope because it is reasonable to assume that the suspect had access to the entire dwelling. Schwinn, 376 F. App'x at 981 (citing United States v. Ayers, 924 F.2d 1468, 1480 (9th Cir.1991)); Hudson v. United States, Nos. 8:14-CV-1175-T-30TGW, 8:12-CR-86-T-30TGW, 2014 WL 4279374, at *5 (M.D. Fla. Aug. 29, 2014) (explaining that where apartment had shared living room, kitchen, and bathroom, there was probable cause to search the entire premises and law enforcement did not exceed the scope of the warrant by searching defendant's bedroom).

In this case, the affidavit submitted in support of the warrant application provided probable cause for the search of the entire dwelling, including Defendant's bedroom. The affidavit indicated that an account with the username mitch7177 was being used in connection with the downloading and sharing of child pornography, that the IP address

10

being used by "mitch7177" was being used by Kevin Mitchell Dean, and that evidence obtained during the investigation suggested that Kevin Mitchell Dean resided at 4164 Oakwood Way. (Orkin Aff. ¶¶ ). The affidavit described 4164 Oakwood Way as being a townhouse style home with a front and rear entry. (Orkin Aff., Attachment A). An undercover agent also reported that Dean stated during conversations over Kik, that he has a roommate. (Orkin Aff. ¶ 16). Given that Dean referred to the co-occupant of the townhome as a roommate and there was nothing about the exterior of the townhome that would lead officers to believe that the residence was subdivided, the officers reasonably would have inferred that the two shared the space in the townhome and that Dean would have had access to the entire townhome. Schwinn, 376 F. App'x at 981 (explaining that where affiant knew that there was one apartment with common areas and three bedrooms that could possibly be rented out individually it was not unreasonable for the officers to believe or for the magistrate to accept that there was a fair probability that the evidence of the crime could be found within any room in the unit). Based on these facts, there would be no basis for officers to conclude that Dean and his roommate[1] lived in separate spaces under separate lock and key. Indeed, the affidavit indicates that there was one front door, not two. (Orkin Aff., Attachment A). Additionally, Defendant does not

---

[1] Although Defendant and the Government have stipulated that Defendant has never been Dean's roommate (Doc. 22, at 2-3), Defendant presents no facts or argument tending to show that it would have been unreasonable for agents to trust Dean's statement on Kik that Dean had a roommate. Additionally, Defendant points to no basis for the agents to interpret Dean's statement that he had a roommate as anything other than a typical roommate relationship where two people living in the same place share common space such as a kitchen or family room.

AO 72A
(Rev.8/82)

mention any signs of separate residences within the unit, such as, for instance, separate mailboxes or a separate exterior entry way for Defendant's bedroom. As a result, probable cause existed for the search of the entire residence.

Defendant contends that the officers should have learned before they entered the home whether it was a multi-dwelling property before they obtained the search warrant and entered the home. This Court disagrees with Defendant's interpretation, because the agents' investigation revealed the fact that Dean reported over the internet that he had a roommate. The reference to a roommate implies that Dean and his "roommate" shared the space in the apartment and not that they lived separately. See Dictionary.com, https://www.dictionary.com/browse/roommate (last visited Nov. 9, 2018) (explaining that a roommate is "a person who is assigned to share or shares a room or apartment with another or others"). Thus, the objective facts available to the officers before executing the search warrant suggested that there was no separate units within the townhouse. As a result, it would be reasonable for law enforcement officers to infer, and for the issuing magistrate judge to accept that Dean would have access to the entire residence and that evidence of a crime could be found anywhere within the residence. See Schwinn, 376 F. App'x at 981; see also United States v. McLellan, 792 F.3d 200, 213 (1st Cir. 2015); United States v. Kyles, 40 F.3d 519, 523-24 (2d Cir. 1994) (rejecting argument that agents did not lawfully search defendant's locked bedroom pursuant to a warrant even though defendant maintained that his room was a separate residence and he was not named as a suspect in affidavits underlying the warrant because agents had no reason

12

to believe that defendant's bedroom was separate residence since it had no separate access from the outside, it did not have its own doorbell, and it did not have its own mailbox); United States v. Hinds, 856 F.2d 438, 441-42 (1st Cir. 1988) (explaining that warrant authorizing search of entire building housing two families properly authorized the search of second family's living area because the mere presence of two families in a building does not automatically change its character from single family to multifamily and where second family's living area was openly accessible to anyone in the house and there were no indications that more than one family lived there, such as separate doorbells or mailboxes).  Accordingly, the search warrant was valid.

### B.    Reasonableness of the Execution of the Warrant

Defendant argues the law enforcement officers did not behave reasonably once they entered into the residence because "[o]nce the officers entered the property and learned that it wasn't being used as a single family dwelling, but was instead a multi-dwelling unit, . . . the officers should have stopped their search and sought a warrant for a particularized search of [Defendant's] bedroom residence."  (Def.'s Reply, Doc. 36, at 5).  Defendant maintains that at that point, the warrant was clearly facially deficient because there were no details in the warrant that described the place to be searched as a multi-dwelling property or described items to be seized in relation to Defendant Reed. Defendant argues that upon entering the property, law enforcement officers conducting the search could see that the property was a multiple dwelling, yet still searched his rented bedroom.  Officers executing the warrant must act reasonably in light of new

13

information they learn during the search.  Schwinn, 376 F. App'x at 980.

In this case, Defendant argues that the officers learned once they entered the townhouse that the townhouse was a multiple dwelling.  Defendant, however, does not meet his burden of proving that law enforcement officers behaved unreasonably in their execution of the warrant under the circumstances.  First, Defendant does not present any evidence that the officers, upon entering the townhome, would have reason to believe that his bedroom was a separate residence.  As discussed above, Defendant presents no evidence of separateness such as separate doorbells or separate entrances.  Defendant does not even present evidence that the doorway to his bedroom had a separate lock for a key or any evidence of a division between the space he occupied and the remainder of the residence.  Indeed, there is no evidence whatsoever that Dean did not live there or did not have access to the entire premises, including Defendant's bedroom; thus, it would still be reasonable for officers to suspect that evidence of child pornography could be found in Defendant's bedroom as well as the rest of the residence.  Accordingly, this Court cannot conclude that the officers learned any new information when they were executing the search warrant that should have caused them to refrain from searching Defendant's bedroom or that they executed the warrant in an unreasonable manner when they searched Defendant's bedroom.  Kyles, 40 F.3d at 524 (explaining that if during a search that the officers become aware that the warrant describes multiple residences, the officers must confine their search to the residence of the suspect, and that factors that indicate a separate residence include "separate access

14

from the outside, separate doorbells, and separate mailboxes") (citing <u>Hinds</u>, 56 F.2d at 441-42).

## CONCLUSION

Based on the foregoing, Defendant's Motion to Suppress Search and Amended Motion to Suppress Search should be **DENIED**.  (Docs. 16, 22).  Defendant's Motion to Suppress Statement has been abandoned and should also be **DENIED**.  (Doc. 17). Because there are no more motions or other matters to address for Defendant Reed, the undersigned certifies Defendant Reed ready for trial.

**SO ORDERED, REPORTED AND RECOMMENDED** this __13th__ day of November, 2018.

LINDA T. WALKER
CHIEF UNITED STATES MAGISTRATE JUDGE

15